REUBEN V. HARVEY, Respondent, v. ST. LOUIS BUTCHERS' JOINT STOCK AND BENEVOLENT ASSOCIATION, Appellant.

*Contract — Sale — Delivery — Statute of Frauds.*—Under the statute of frauds, no sale of goods is valid unless the buyer accept and actually receive part of the goods, or the contract be witnessed by writing. The goods must not only be accepted but actually received; there must be a delivery of possession by the vendor to the vendee.

*Appeal from St. Louis Circuit Court.*

For plaintiff the court gave the following instructions:

1. If the jury believe from the evidence that 97 head of cattle were verbally purchased by an agent of defendant at a price agreed on ; that the cattle were examined by said agent personally and accepted at the time of said purchase, or at any other time prior to their delivery, and were directed by said agent (if he did not sooner call for them) to be driven to Dresden and placed in the cattle pens at said depot, and they were so driven and delivered at the time and place specified in the said verbal contract : and they further find that defendant, at any time before the loss of the cattle, exercised acts of ownership over said cattle by offering to sell the same, or any part thereof, as the property of said defendant, and that defendant by its agent brought or directed hay to be brought with a view to the shipment of said cattle from Dresden to St. Louis, and that after the delivery at Dresden and before the loss occurred the defendant's agent sent word to the plaintiff that ＊ ＊ ＊ ＊ , the jury may infer that said verbal contract was executed, and that there was an acceptance and actual receipt of said cattle by the defendant, and the title to said cattle thereby vested in the defendant ; and if the jury so find, they will find for the plaintiff.

2. The jury are instructed that an acceptance, within the meaning of our statute, may be prior to the receipt of the cattle ; and if the jury find in this case that there was a verbal sale of a specific lot of cattle as stated in the petition, and there was an acceptance of said cattle at the time of the sale, and that there was a subsequent delivery of said identical cattle at a place and time designated by the defendant, whereby the plaintiff parted with the possession of the cattle with the intent of putting an end to all his title, interest and possession in said cattle, such contract must be regarded as partially or fully executed and valid under our statute ; and if the jury so find, they will find for the plaintiff.

3. A delivery of specific property under a verbal sale that

has been examined and accepted by the vendee at a place described by the vendor, is equivalent to an actual receipt by the vendee within the meaning of our statute.

4. If the jury find from the evidence that the plaintiff had a specific lot of cattle which the defendant by its agent examined and agreed with the plaintiff to purchase and take at the price of $72.50 per head, then this constituted an acceptance of said lot of cattle prior to their delivery; and if the jury further find that at the time of such acceptance it was further agreed between the parties, that if the defendant by its agent or agents did not sooner call for said cattle that the plaintiff should on the 1st day of October, 1864, in pursuance of said purchase, deliver the same into the stock pens of the Pacific railroad at Dresden for the defendant, and that the plaintiff did so deliver said lot of cattle into the said stock pens at the time appointed, and leave the same there for the defendant, abandoning his own possession thereof with the view to vest the title thereto in the defendant, then such acceptance as aforesaid and such delivery constituted an actual receipt of said cattle by the defendant within the meaning of the statute of frauds and entitles the plaintiff to a verdict in this case.

5. If the jury believe from the evidence that there was an acceptance and delivery of the cattle as contemplated in the 1st instruction for plaintiff, then they must find for plaintiff, notwithstanding the plaintiff may after suit brought have taken possession of a portion of the cattle, or money the proceeds of their sale, with or without the consent of the defendant or its counsel.

The court found the issues for the plaintiff and assessed his damages at $3,883.10, it having been admitted by plaintiff that he had received the proceeds of some 28 head of cattle, and judgment was given accordingly.

*Lackland, Cline & Jamison*, for appellant.

The appellant claims that the facts in this case establish the contract to be clearly within the statute of frauds.

That delivery and acceptance must be established by some act of the parties; that no words, however significant they may be, are sufficient; and, in support of the position before this court, relies upon the following authorities—Shindler v. Houston, 1 Comst. 261; Kirby v. Johnson, 22 Mo. 354; Baldry et al. v. Parker, 2 Barn. & Cress. 37 (9 E. C. L. R. 16); Phillips v. Bustable, 2 B. & C. 511 (9 E. C. L. R. 162); How v. Palmer, 3 B. & A. 321 (5 E. C. L. R. 303).

The conversation between witness George W. Wallace and Mr. Morse, agent of the Butchers' Association at St. Louis, in nowise changes the character of the case; it occurred some weeks after the pretended delivery, and was of itself no acknowledgment that the cattle had either been delivered by the plaintiff or accepted by the defendant; and if it did, it was mere words, which, as we have seen, can in no case, however strong they may be, amount to acts, and without which there can be no delivery within the established meaning of our statute of frauds — 2 B. & C. 511; 3 B. & A. 321; 2 C. & C. 532; 22 Mo. 354; 1 Comst. 261; 2 Barn. & Cress. 37.

*Glover & Shepley*, (also) for appellant.

I. There was no delivery of the cattle at the time of the sale so as to take the transaction out of the statute of frauds.

The 6th section of the statute of frauds (R. C. 1855, p. 809) provides that no contract for the sale of goods * * * shall be allowed to be good except the buyer shall accept part of the goods as sold and actually receive the same, or give something in earnest to bind, &c. * * * * unless some note or memorandum thereof shall be in writing, &c.

II. The fact that the plaintiff drove the cattle to Dresden at the time agreed on in no respect alters the situation of the parties, or makes that a delivery which had not been a delivery before; for,

1. There was no acceptance, and without an acceptance there can be no delivery. This the statute requires in terms —Kirby v. Johnson, 22 Mo. 354; Lovelace v. Stewart, 23

Mo. 384; Shindler v. Houston, 1 Comst. (N. Y.) 261–7; Brown on Stat. Fr. § 317. The evidence of the driving to Dresden makes it a part of the bargain as much as the number and price, and requires it to be in writing just as much as any other part of the bargain. The danger guarded against by the statute is as great as to this part of the bargain as to any other part—all rest in words merely.

2. The lien of the vendor for the purchase money was at no time released, and unless that takes place there cannot be a delivery—Brown on Stat. Fr. § 317, and decisions in note 2; Shindler v. Houston, 1 Comst. 769–70; Tempest v. Fitzgerald, 3 Barn. & Ald. 680; Holmes v. Hockins, 9 W. H. & G. 753; Lovelace v. Stewart, 23 Mo. 386–7. The only case that lends any support.to the plaintiff's views is that of Harris v. Matthews, 3 Jurist, 1192.

3. There were no servants or agents of defendants there to receive or accept the merchandise. But, in addition to this, we say that that case is not law; and that in cases where the facts going to show a delivery and acceptance were much stronger than in that case, it has been held that they constituted no delivery—Actual v. Levy, 10 Bing. 384; Meredith v. Mugh, 2 Ell. & Bl. 364; Norman v. Phillips, 14 Mees. & W. 277; Shepherd v. Pressey, 32 N. H. 55; Spinner v. Hale, 30 Vt. 315; Tempest v. Fitzgerald, 2 Barn. & Ald. 680.

III. The acts of the plaintiff and his agent negative the idea of delivery. The plaintiff instead of leaving the cattle there at Dresden, drove them away back west to the place from whence they were taken.

The case chiefly relied upon, in addition to the case in 3 Jurist, is the case of Cusack v. Robinson, 1 Best & Sm. 199. By an examination of that case, it will be found that at the time of the bargain the buyer had examined the particular lot of butter, selected it, and gave directions that the seller should apply to his agent, who would give directions how it should be sent to the warehouse to which he directed it to be sent in London; that that was a warehouse where the buyer received his butter, where he stored it, and from

whence he sold it. It was therefore, in all respects, his warehouse for the transaction of his butter business. After it was received at this warehouse, the buyer gave an order on the warehouseman to deliver the butter to another party. Without going back to what occurred at the time of the bargain, one would think that the facts made out a pretty strong case both of delivery and acceptance.

The only matter which can benefit the plaintiff is what fell from the court as to whether there could be an acceptance prior to the delivery. Prior to this case and the case of Morton v. Tibbetts, 15 Adol. & El. (N. S.) 428, it had been the universal understanding that the acceptance must be simultaneous with or after the delivery. Those cases seem to hold a different doctrine for the first time; but in the case of Saunders v. Tupp, 4 Exch. 390, all from Judges Parke, Addison, Rolf, and Platt, hold the doctrine that it must be contemporaneous with, or subsequent to, the delivery; and that is the universal language of the courts of the United States, as stated in Bro. on Stat. Fr. § 317.

*Napton*, for respondent.

It will be perceived by the court, that the only question before the court is whether the facts hypothetically assumed in the instructions, and which indeed we may say were clearly proved on the trial, made out a case of sale valid under the statute of frauds, and we maintain the affirmative.

As the only defence attempted in this case is the statute of frauds, and that statute has been judicially examined, and every clause and expression in it judicially settled, the question must be regarded as one of authority and precedent mainly.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff sues for the price of a herd of cattle, sold and delivered to the defendants. It appears that the defendants' agent went to the farm of plaintiff in Pettis county, examined the cattle and bargained for the whole herd. The

price and number of the cattle were agreed upon, and they were to be driven by the plaintiff to Dresden, a station on the Pacific railroad and delivered into the cattle pens at that place, on or before the last day of September, unless the defendant came for them before that time, and they were driven by the plaintiff's agent to Dresden, and put into the stock pens on that day, but there was nobody there to receive them on behalf of the defendants, and they were driven away again to a herding place by the same agent. The cattle remained in the possession and control of the plaintiff or his agent, as it would seem, until they were captured by hostile forces and lost. There was no memorandum in writing; no part of the price was paid, and there was no actual change of possession at the time. The cattle were never actually delivered into the possession of the defendants, or of any agent of theirs who was authorized to receive them in their name.

The statute provides that no sale of goods shall be valid unless the buyer shall accept part of the goods so sold and actually receive the same—Rev. Stat. 1855, p. 809, § 6. The goods must not only be accepted, but actually received. An acceptance ascertains the identity and quality of the goods sold, and the receiving of them changes the possession.

The question here is not so much of an acceptance as of a delivery and receipt of the cattle. The number and quality of the cattle were sufficiently ascertained, but there was no delivery of possession. Mere words were not enough for the purpose. There must be some unequivocal acts of acceptance and actual receipt of the property—Kirby v. Johnson, 20 Mo. 354; Shepherd v. Pressey, 32 N. H., 49; Shindler v. Houston, 1 Comst. 261; Meredith v. Neigle, 2 El. & Black. 363; Morton v. Tibbett, 15 Adolph & El. (N. S.), 428; Cusack v. Robinson, 1 Best & S., 297; Matthews v. Harris, 3 Jur. 1192; Cunningham v. Ashbrook, 20 Mo. 553.

A delivery of possession necessarily implies a change of the dominion and control over the property. Without an acceptance and receipt there can be no such thing as a de-

livery. In the case of cumbersome articles, not admitting of strict manual delivery, symbolic acts which clearly signify that the dominion and control over the property has been actually transferred from the vendor to the vendee, may sometimes be sufficient, as it was held in Bass et als. v. Walsh, *ante* p. 192. A drove of cattle is a thing that ordinarily implies the inevitable care and control of some persons in whose charge they are. These cattle continued to be in the charge and control of the person appointed by the plaintiff as his agent to drive them to the place named, and then deliver them to the buyer. They never passed out of his possession into that of the defendants, or of any agent or servants of theirs. The vendor's lien was never lost. The terms of sale were cash on delivery. It is not probable that the vendor intended that the property should pass beyond his control until the matter of payment was arranged to his satisfaction. When no person was found at the place of delivery to receive and pay for the cattle, they were driven away and herded elsewhere by this same agent of the plaintiff. There was no evidence on which it can be maintained that this person was constituted or had become the agent of the defendants. No connection between him and them was shown. In Williams v. Evans' Adm'r, *ante* p. 192, the personal dominion of the vendor over the slaves sold had been surrendered to the vendee, and the jailor in whose actual charge they were, with the understanding of all parties, had been constituted the agent of the vendee, and became the custodian of the property on his behalf. That the plaintiff here may have considered that the defendants would be chargeable with the expense of keeping the cattle after the day named for delivery, or even before, would be nothing to the purpose. Nor would it have made any difference if the defendants had been privy to that understanding—Kirby v. Johnson, 20 Mo. 354. It would have answered merely to another condition on which only a delivery would actually be made by the vendor, at a subsequent time, or at another place at his option. In Doorley v. Varley, 12 Adolph & El.

632, there was a change of possession and an actual receipt of the goods. The property is *in transitu* while it remains in the possession of the vendor—6 Barn & Cr. 422.

It appears that the defendants had intended to transport the cattle on the railroad, had engaged cars, and had provided hay for their keeping. It does not appear that the railroad company was to receive the cattle into the charge of their agents on behalf of the defendants, whether at the cars, or at the stock pens, nor that it was the practice of the company to do this in any case. The evidence goes no further than to show that the defendants had intended to receive them at the stock pens for transportation on the railroads under their own charge and control. But neither they nor any agent or servant of theirs was there on that day to receive them at all, and they were not received. In Cusack v. Robinson, 1 Best & Smith, 297, the goods were received at the warehouse appointed by the defendant into custody of his own agent, and were delivered out again upon his order. There was clear evidence of an acceptance and actual receipt of the goods in Matthews v. Harris, 3 Jur. 1192. The goods were delivered at the Plough Inn, where the defendant was to receive them, and where he boarded, to one of the servants at the inn, who actually received them, and might therefore be deemed and was deemed to be the servant of the defendant for that purpose. There clearly was no such delivery and receipt in this case. The plaintiff never parted with the possession of the property to any agent or servant of the defendants. His personal dominion over the cattle in charge of his own agent still continued as before.

The whole case depends upon this question. Now there can be no delivery but to some person. The personal dominion over the property must be transferred from the vendor to the vendee. If there had been any agent of the defendants at Dresden, or any person at the cattle pens, whether the servant of the defendants or of the railroad company, who was authorized to receive the cattle on behalf of the defend-

ants, and if any such person had actually received them into his own charge and control for the defendants, there could have been no doubt about an acceptance and receipt, and an actual delivery. Nothing of this kind was done, and we are of the opinion that there was no sale within the meaning of the statute of frauds.

It follows, from this view of the case, that the defendants' instructions should have been given, and the plaintiff's instructions refused.

Judgment reversed and the cause remanded. The other judges concur.

