H. M. HOFFMAN, Appellant, v. WISCONSIN LUMBER COMPANY, Respondent.

Springfield Court of Appeals, March 25, 1921.

1. **FRAUDS, STATUTE OF:** Goods "Received" when Delivered. Goods are "received," within Revised Statutes 1919, section 2170, requiring note or memorandum of contract for purchase of goods, when delivered, and what will constitute delivery will satisfy that feature of the statute.

2. ———: In Addition to Delivery of Goods There Must be Acceptance. In addition to what is understood by delivery of goods in the ordinary sense by the seller, there must be an acceptance of them, or some part thereof, by the buyer, under Revised Statutes 1919, section 2170.

3. ————: **Delivery of Hay on Car with Delivery of Bill of Lading to Agent Held a Complete Delivery.** Where it was agreed that hay should be delivered on car at C., and this was done, and hay billed to purchaser at R. by its request, and the bill of lading was made out in buyer's name and delivered to its agent, who was the same party who had bought the hay, the delivery was complete, under Revised Statutes 1919, section 2170.

4. ————: **Delivery, Transfer of Possession, and Control, and Acceptance of Property, Held Sufficient, Whether Inspected or not.** A complete delivery of the property and a transfer of possession and all control and dominion over it from the seller to the buyer, and the acceptance of such possession, control, and dominion over the property by the buyer, under the contract of sale, meets all the requirements of the statute, Revised Statutes 1919, section 2170, whether there has been an inspection or not.

5. ————: **Delivery of Hay on Car and Acceptance Thereof by Buyer Shown.** Where it was agreed that hay should be received f. o. b. at C., and seller loaded it on the car as directed by buyer and billed it to buyer at R., and took the bill of lading in buyer's name and turned it over to buyer, and the goods were transported to R. and stood on the track from Saturday until Tuesday, when buyer unloaded it and inspected it and rejected it, there was an acceptance as well as delivery of the hay, under Revised Statutes 1919, section 2170.

6. **SALES:** **Title Held to Pass on Acceptance of Bill of Lading.** Where it was agreed that hay should be received from plaintiff seller f. o. b. at C. to be shipped to defendant at R., and seller loaded it on car at C. as directed by buyer and billed it to buyer at R., and took bill of lading in buyer's name and turned it over to buyer, the title to the hay became vested in the buyer.

7. ————: **Buyer Has Right to Reasonable Opportunity to Inspect: Passing of Title not Dependent upon Prior Inspection.** The right to inspect and return for defectiveness remains until the buyer has had a reasonable opportunity to inspect and determine the quality of the goods; but inspection is not a condition precedent to the passing of title, but rather in the nature of a condition subsequent.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*Mayes & Gossom* and *McKay & Meddling* for appellant.

(1) Whether or not there has been an acceptance is a question of fact for the determination of the jury. Ruediger v. Dennis et al., 201 S. W. 943, 273 Mo. 72; Hollrah-Dieckmann Refrigerator and Fixture Co. v. St. Louis House and Window Co., 186 Mo. App. 207; Tiedman on Sales, sec. 64, p. 75; Garfield v. Paris, 96 U. S. 563; Bass et al. v. Walsh, 39 Mo. sec. 192, p. 120; Houghtaling v. Ball et al., 19 Mo. sec. 84, p. 53; Cunningham v. Ashbrook, 20 Mo. 554-555, p. 350; Strong v. Dodds, 47 Vt. 354; Swafford v. Spratt, 93 Mo. App. 631, 635-636; Benjamin on Sales (Bennett's Notes), secs. 144-145-146-147.    (2) And circumstances of the slightest probative force may be submitted to the jury for the purpose of determining whether there has been an acceptance.    Brown on Statute of Frauds, secs. 318a, 319, 321; Swafford v. Spratt, 93 Mo. App. supra; Benjamin on Sales (Bennett's Notes), sec. 156a, pp. 134-5-6. (3)    And the test for determining whether there has been an acceptance by the purchaser within the meaning of the Statute of Frauds is whether or not the vendor has lost his lien.    Ruediger v. Dennis et al., 201 S. W. 943, supra, l. c. 943; Benjamin on Sales, sec. 187. (4)    And the buyer may so far accept the goods as to do away with the objection of the Statute of Frauds, and yet may retain the right to examine the goods and to reject them if not of proper quality.  1 Reed on Statute of Frauds, sec. 280, p. 429; Strong v. Dodds, 47 Vt. 354; Smith v. Stoller, 26 Wis. 671.    (5) We do not perceive how the Statute of Frauds can cut any figure in this case.    We contend that the ·evidence unquestionably shows a delivery and acceptance sufficient to satisfy the statute.    The hay was delivered at Caruthersville, put upon the car there, the place defendant directed it to be delivered; that was the end of appellant's duties.  When appellant delivered the hay to the common carrier at Caruthersville, the place of delivery, as agreed upon,

that constituted a delivery to defendant, and under the law, was an acceptance. The common carrier became the agent of the defendant. Plaintiff not only delivered to defendant the hay in question, but delivered to it the bill of lading which also constituted a delivery complete. If the kind of hay that defendant bought was delivered f. o. b. car at Caruthersville, that was sufficient under the statute. Montgomery v. Gann & Mathers, 51 Mo. App. 187; Hollrah-Dieckmann Refrigerator and Fixture Co. v. St. Louis House and Window Co., 171 S. W. 577, supra; Benjamin on Sales (Bennett's Notes), sec 147-148; Bass et al. v. Walsh, 39 Mo. sec. 192, supra; Cunningham v. Ashbrook, supra; Bloom's Son Co. v. Haas, 130 Mo. App. 122; Milling Co. v. Stanley, 132 Mo. App. 308; Lewis v. Imhof, 138 Mo. App. 370.

*Ward & Reeves* for respondent.

(1) There was no evidence in this case that the property was accepted by the respondent, and there was therefore no case made for the jury. Section 2784, R. S. 1909; Wainscott v. Kellogg, 84 Mo. App. 621; Parma v. Ellsberry, 79 Mo. App. 570; Sotham v. Weber, 116 Mo. App. 104; Ruediger v. Dennis, 199 Mo. App. 102; 29 Am. & Eng. Ency. of L. (2 Ed.), p. 984; 20 Cyc., p. 249. (2) "Acceptance cannot be inferred from the mere retention of the possession of the goods by the buyer for a time no longer than is necessary to enable him to examine their quality and quantity." 20 Cyc. 249; Tiedman on Sales, sec. 68.

COX, P. J.—Action to recover $306.05 for a car load of alfalfa hay. At the close of the testimony, a demurrer to the testimony was filed by defendant and sustained and the jury peremptorily instructed to return a verdict for defendant. Plaintiff has appealed.

The petition alleged the sale and delivery of the hay f. o. b. Caruthersville at the agreed price of $25 per ton amounting to 306.05.

The answer is a general denial, and the plea of the Statute of Frauds, and failure to deliver the kind of hay purchased. It is alleged that the value of the hay was more than $30 and the agreement to purchase was oral and no part of the hay received and accepted by the defendant and the sort of hay offered to defendant was not of the kind, grade or quality purchased.

The undisputed facts are that defendant by oral agreement purchased from plaintiff a car load of field cured, baled alfalfa hay at $25. per ton f. o. b. Caruthersville, to be shipped to defendant at Rives, Missouri, and to be paid for in two or three weeks. The plaintiff loaded the hay in a car at Caruthersville and billed it to defendant at Rives late Friday evening, received a bill of lading in defendant's name therefor, and delivered the bill of lading to defendant on Sunday following. The hay reached Rives safely Saturday about noon and remained in the car until the following Tuesday when it was unloaded by defendant onto the platform of the railroad company. The defendant, after an examination of the hay, rejected it and procured another car, loaded the hay into that car and notified the plaintiff that the hay would not be accepted. This refusal to keep and pay for the hay was on account of the fact that defendant's agent, who had the matter in charge and who had brought the hay, thought the hay was not of the quality bought and not on account of the fact that the contract for its purchase was an oral one.

The disputed facts related to the quality of the hay.

There was testimony by plaintiff that the car was furnished by defendant's direction, that it was a closed car, and that field baled hay would heat if left in a closed car too long, and that he had notified the defendant of that fact.

The trial court evidently gave the jury a peremptory instruction to find for defendant upon the theory that plaintiff was precluded from recovery by the Statute of Frauds.

The statute here involved, section 2170, Revised Statutes 1919, is as follows: " No contract for the sale of goods, wares, or merchandise, for the price of $30 or upward, shall be allowed to be good unless the buyer shall accept part of the goods so sold and actually receive the same, or give something in earnest to bind the bargain or in part payment, or unless some note or memorandum in writing be made of the bargain and signed by the parties to be charged with such contract or their agents lawfully authorized." This statute, except as to the value of the goods, is practically the same as the Seventeenth Section of the English Statute and statutes similar to these have been enacted in nearly, if not all, of the States in this country. The plain language of the statute is, that if the contract is oral and the price of the goods is $30 or more and no part of the purchase price is paid, the contract is not binding on either party until the buyer shall "accept part of the goods so sold and actually receive the same."

The discussion by the courts and text writers as to what is meant by the terms "accept" and "receive" as used in this statute has covered a wide range and resulted in many conflicts and inconsistencies, many of which will disappear on a careful reading of the facts on which the discussion in the different cases is based.

It is generally ruled that the goods are "received" when delivered and what will constitute delivery will satisfy that feature of the statute.

It is also generally ruled that in addition to what is understood by delivery of the goods in the ordinary sense by the seller, there must be an acceptance of them or some part thereof by the buyer but what will meet the requirements of the statute as to acceptance, has not been so well defined.

Some of the expressions on this question may be noted as follows:

A mere receipt of the goods by the vendee is not enough. There must be some act of the vendee showing that he has received them under the contract and

this act must be sufficient to warrant a finding that he has received them as owner. [Dinnie v. Johnson, (N. D.) 77 N. W. 612.]

Any act which shows that the buyer is treating the goods as his own is sufficient to show acceptance even though there has been no examination and no opportunity to examine. [Snow v. Warren, 51 Mass. (10 Metcalf) 132.]

If the buyer does anything with the goods or to them which would be wrong if he were not the owner but right if he were the owner, this will imply acceptance. [Benjamin on Sales (3 Amer. Ed.), sec. 144.]

Any act done as owner will satisfy the statute. [Patterson and Holden v. Sargeant, Osgood & Roundy, (Vt.), 77 Atl. 338.]

When the seller parts with all control over the goods and full control is assumed by the purchaser, the statute is satisfied whether there has been an inspection of the goods or not (Strong v. Dodd, 47 Vt. 348), and this does not destroy his right to inspect in a reasonable time and then reject, or more properly, rescind on account of the defect in the goods. [Same.]

The purchaser must receive and retain the articles delivered intending thereby to assume the title to them to constitute the acceptance mentioned in the statute. [Rogers v. Phillips, 40 N. Y. 519.]

Mere words are not sufficient. There must be some act done signifying the intention of the seller to part with the title to the goods and the intention of the buyer to assume the ownership of them. [Shindler v. Houston, 1 N. Y. 216.]

If the buyer accepts the possession of the goods intending to keep them if on inspection they are found to comply with the contract as to quality and quantity, this is sufficient acceptance to satisfy the statute. [Strong v. Dodd, 47 Vt. 348; Smith et al. v. Stoller, 26 Wis. 671.]

As long as the buyer retains the right to object either to the quality or quantity of the goods, there is

not acceptance within the meaning of the statute. [Lloyd v. Wright, 25 Ga. 215; Hausman v. Nye, et al., 62 Ind. 485.]

If goods of the quality bought are delivered at the place agreed, then acceptance by the purchaser need not be shown in addition thereto. [Metrols v. Morce, 100 Mass. 523; Rodman v. Guilford, 112 Mass. 405.]

The question involved in most of the decided cases has been one of delivery rather than acceptance and what is said as to the latter loses some of its force by reason thereof.

In our own State, we find that much the same condition obtains.

In Kirby v. Johnson, 22 Mo. 354, cattle were bought by oral contract and left with the seller until the buyer should call for them and it was agreed that if any should die in the meantime, the buyer should be the loser. The seller sold to another party and the first buyer sued for damages for breach of the contract to sell to him. Held: he could not recover. In discussing the statute and while commenting on the case of Shindler v. Houston, (1 Const. Rep. 261), the court said: "I concur in the language of WRIGHT, Judge, in this case in which he says 'I think I may affirm with safety that the doctrine is now clearly settled that there must not only be a delivery by the seller but an ultimate acceptance of the possession of the goods by the buyer; and this delivery and acceptance can only be evinced by unequivocal acts independent of the proof of the contract. . . . There was no act done after the sale amounting to a delivery of the oxen by Johnson to Kirby and an acceptance by Kirby of the oxen from Johnson; that is, there was no delivery by the vendor with an intention of vesting the right of possession in the vendee and there was no actual acceptance by the vendee with the intent of taking possession as owner.' "

In Sotham v. Weber, 116 Mo. App. 104, 92 S. W. 181, the term "accept" and "receive" are not separately discussed but it is there said (page 108) "the acts of the

parties must be of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer."

In Milling Co. v. Stanley, 132 Mo. App. 308, 111 S. W. 869, cotten seed meal was bought by oral contract to be delivered f. o. b. at Ascot, Kansas. The meal was shipped to shippers' order and bill of lading with draft attached sent. The railroad company refused permission to open the cars for inspection of the meal at Ascot and the purchaser refused to pay the draft and take the meal. Held: the purchaser was not liable. In that case the court said: "At the time of the contract, the goods were not present. The sale was executory. That was to be a future delivery at a certain place. This implied a right of inspection of quality and quantity and then as contemporaneous acts, there should be a delivery and payment. On a shipment directly to the consignee, a delivery to the carrier is a delivery to the consignee but that is not so when the shipment is to the consignor's own order. In the latter instance, he does not part with the property. In the former, he does, subject to his right of stoppage *in transitu*."

In Harvey v. St. Louis Butchers' Assn., 39 Mo. 211, the only question involved was delivered yet the court said at page 217: "The goods must not only be accepted but actually received. An acceptance ascertains the identity and quality of the goods sold and the receiving of the them changes the possession."

In Bass et al. v. Walsh, 39 Mo. 192, hay was shipped to one Hawley, a commission merchant at St. Louis by a boat named "Sucker State" and unloaded on the wharf. Hawley sold to defendant at $33 per ton and a card signed by him was delivered to the purchaser. This card was as follows: "Two Hundred Twenty-Three bales of hay, tight pressed, at Sucker State.

HAWLEY."

The purchaser requested that the hay be not weighed until the next morning. Hawley consented but stated that the hay would be at the purchasers charge and ex-

pense. This the purchaser agreed to and asked Hawley to have the hay covered with tarpaulins and he would pay for it. This was done. The next day was wet and drizzly and the hay was not weighed that day and on the following day it was destroyed by fire. The case was tried before the court sitting as a jury who found for plaintiff.

Declarations of law asked by plaintiff were given and those asked by defendant refused. The statement of the case does not disclose whether or not there was an inspection of the hay or any acceptance by the purchaser in the sense of his agreeing that the hay was of the quality he had purchased. One of the declarations asked by defendant and refused was as follows: "Unless defendant actually accepted the hay described in plaintiff's petition, the sale was void under the Statute of Frauds; and there was no actual acceptance on the part of the defendant if he still retained the right to object to the quality or quantity of the hay."

One of plaintiff's declarations was a follows: "If the court finds that plaintiffs, by their agent, sold the hay in question to defendant at $33 per tan and at the time, delivered to him a sale. ticket as described in evidence; that, by custom, said sale ticket authorized defndant to receive the hay and placed the same under his control, then there was a valid sale and delivery of the hay."

The declarations of law given on part of plaintiff said nothing about inspection or assent to the hay being of the quality purchased but proceeded on the theory that a complete delivery made the contract of sale binding.

As far as the record discloses, the only "acceptance" by the purchaser in that case was an acceptance of the delivery of the specific hay purchased and his directing it to be covered for protection against the weather. The sellers had done all they were to do and in discussing the case, the court said, page 201, "Nothing more, then, as respecting the hay was required of the sellers and if upon the agreement the respondents relinquished all

control over it and the appellant by his acts and declarations assumed the ownership, the sale, delivery and acceptance were complete and amounted to a transference of the title to the property. . . . The court sitting as a jury, upon proper declarations of law, found in the affirmative and we do not deem ourselves authorized to disturb the verdict.''

As we view this case, the court by approving plaintiffs' instructions held that a surrender by plaintiff of all control and dominion over the hay sold and the assumption of full control and dominion over it by defendant under the contract made the sale complete whether there had at that time been an inspection or not. By refusing the instruction asked by defendant which stated that ''There was no actual acceptance on the part of the defendant if he still retained the right to object to the quality or quantity of the hay'' the court held against the proposition that acceptance could only mean an acceptance of the goods as to quality and quantity.

From the foregoing review of cases in other jurisdictions as well as in our own State, it will readily be seen that no settled, uniform and definite rule for ascertaining when the goods have been accepted within the meaning of this statute has been promulgated. Every case must stand largely upon its own facts.

In this case, it was agreed that the hay should be delivered on the car at Caruthersville. This was done and the hay billed to defendant at Rives by its request and the bill of lading was made out in its name and delivered to its agent who was the same party who had bought the hay. This made the delivery complete so the only question here is one of acceptance. On that question if we follow the language of our Supreme Court in Harvey v. Butchers Assn., 39 Mo. 211, wherein they say that ''acceptance ascertains the indentity and quality of the goods sold'' and that this means that there must be an inspection of the goods by the buyer and his assent that the goods are of the quality purchased, then the trial court was right in giving a peremptory instruction to

find for defendant in this case unless defendant lost its right to inspect by delay in making the inspection. If we follow what we conceive to be the position taken by the same court at the same term in the case of Bass, et al. v. Walsh, 39 Mo. 192, then the action of the trial court in giving a peremptory instruction for defendant was error.

The question of acceptance was not involved in the Harvey case and what was there said on that question was, therefore, *obiter*. We think the question was involved in the Bass case and while the question of inspection or acceptance as to quantity or quality is not discussed we understand the purport of that decision to be to the effect that a complete delivery of the property and a transfer of possession and all control and dominion over it from the seller to the buyer and the acceptance of such possession, control, and dominion over the property by the buyer under the contract meets all the requirements of the statute whether there has been an inspection or not.

This seems to us to be the reasonable construction of the statute. This is a Statute of Frauds. Its purpose is to prevent fraud and wrong when the value of the goods is $30 or upward. Its primary purpose is to protect the buyer and he should have the full benefit of that protection as long as any necessity for it exists. The seller while the possession and control of the goods remains with him, can protect himself, but when he has transferred possession and all control and dominion over the property to the buyer, he has lost all vestige of right to the property, even to the extinguishment of his lien for the purchase price and is powerless to protect himself. If at that time, there is no binding contract of sale, he is at the mercy of the buyer. All the reasons that existed in the first instance for the law to protect the buyer have now shifted and the seller is the one who needs the law's protection and should have it.

The facts in this case furnish a good example of the wrong and injustice that might be done under a rule

that the contract is not binding in any case until after inspection and acceptance as to quality. It was agreed that the hay should be received f. o. b. Caruthersville. The plaintiff loaded it on the car as directed by defendant and billed it to defendant at Rives and took the bill of lading in its name and turned this bill of lading over to defendant. The goods were transported to Rives and stood there on the track from Saturday until the following Tuesday. Defendant then unloaded the hay and inspected it. If the contract of purchase was not binding at that time, defendant was not required to inspect the hay and could have rejected it without an inspection. Suppose there had been no question as to the quality of the hay and after the acceptance of the bill of lading and its arrival at Rives, and after it was unloaded by defendant but before inspecting it, the defendant had merely concluded it did not want the hay and had arbitrarily rejected it as it would have had the right to do if not yet bound by the contract. In that case, plaintiff would be left with the expense of freight from Caruthersville to Rives and would have been compelled to reship to Caruthersville or to have sold as best he could at Rives. If that could be done, then under the facts in this case, the statute, instead of preventing fraud and wrong, would become the instrument under and by which it might be consummated. If the statute permits that, then it puts a premium on dishonesty, should the buyer, reject the goods without cause, and penalizes the seller for having trusted him.

There is another view of this case from which we must arrive at the same conclusion. Suppose that after this hay was delivered at Caruthersville, billed to defendant at Rives, and bill of lading delivered to and accepted by it, the hay had been destroyed. The loss in that case, nothing further appearing, would have fallen on defendant because on such a delivery and acceptance, the title to the hay became vested in defendant. [Comstock Co. v. Affoelter, 50 Mo. 411; Scharff v. Meyer, 133 Mo. 428, 445, 34 S. W. 858; Bloom's Son & Co. v. Haas, 130 Mo.

App. 122, 108 S. W. 1078; Hunter Bros. Milling Co. v. Stanley, 132 Mo. App. 308, 111 S. W. 869; Tuttle & Pike Co. v. Bracey-Howard Const. Co., 136 Mo. App. 309, 315, 117 S. W. 86; Lewis v. Imhoff, 138 Mo. App. 370, 375-76, 122 S. W. 329.]

To our mind it would be absurd to say that title to the hay passed to defendant on its delivery on the car at Caruthersville and delivery of bill of lading to defendant and also say that at that time no binding contract for its purchase had been made by it. Title could not pass without the purchaser becoming bound by his contract and the fact that title did pass to defendant conclusively demonstrates that he was bound by his contract of purchase.

In our view of the law, the right of inspection as well as the duty to inspect is directly connected with the right of rescission after the contract is made and is not a necessary part of the execution of the contract. Any person negotiating for the purchase of goods may, of course, inspect them at his pleasure but it is not the inspection that binds him. It is the acceptance of the possession and dominion over the goods as owner under the contract that binds him.

The purchaser does not necessarily lose his right to rescind the contract and return the goods for failure of the goods to comply with the contract merely because he has, by his acceptance of them made the contract binding. Had this contract been in writing or had part payment been made, the right to inspect and to return for defectiveness would have been retained by defendant. This right remains until he has had a reasonable opportunity to inspect the goods and determine their quality. This right of inspection does not carry with it the right to arbitrarily reject. He must make the inspection in a reasonable time and if the goods do in fact meet the requirements of the contract, he must retain them. If they do not, he may return them. This right is preserved to him because the defect in the goods, if there be any, gives

him the right to rescind the contract and not because no binding contract had been executed.

In this case, plaintiff knew that the hay was to be shipped to Rives and it was his duty to see that it was in condition to stand that shipment in the ordinary and usual way and if it was not in that condition when loaded at Caruthersville, the defendant had the right to refuse to keep it. If it was in proper condition when loaded at Caruthersville and was not in good condition when unloaded and inspected at Rives and its change in condition was caused by the neglect of defendant, then it is responsible.

Judgment reversed and cause remanded.

*Farrington* and *Bradley, JJ.,* concur.